IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WILLIE JAMES ATKINS, | § | |
| TDCJ No. 1441701, | § | |
| Petitioner, | § | |
| | § | |
| v. | § | CIVIL NO. 3:16-CV-2942-N |
| | § | |
| LORIE DAVIS, Director, | § | |
| Texas Department of Criminal | § | |
| Justice, Correctional Institutions | § | |
| Division, | § | |
| Respondent. | § | |

## RESPONDENT'S ANSWER WITH BRIEF IN SUPPORT

Petitioner Willie James Atkins was convicted and sentenced to life imprisonment for attempted sexual performance by a child for employment by a Texas state court. All of Atkins's claims should be denied and dismissed with prejudice as time-barred.

## JURISDICTION

Atkins seeks habeas corpus relief in this Court pursuant to 28 U.S.C. § 2254, which provides the Court with jurisdiction over the subject matter and the parties, as Atkins was convicted within this Court's jurisdiction.

## PETITIONER'S ALLEGATIONS

The Respondent (Director) understands Atkins to allege:

1. Error in his state habeas proceeding;

2. Improper search warrant;

3.      Prosecutorial misconduct during a *Franks* hearing;[1]

4.      Prosecutorial misconduct during the guilt/innocence phase;

5.      Ineffective assistance of counsel during a *Franks* hearing;

6.      Ineffective assistance of counsel during the guilt/innocence phase;

7.      Prosecutorial misconduct for introducing false evidence;

8.      Prosecutorial misconduct for suborning perjury and suppressing favorable evidence;

9.      Ineffective assistance of trial counsel for failing to impeach a detective witness;

10.     Ineffective assistance of counsel for failing to provide a defensive theory during opening statement;

11.     Prosecutorial misconduct for suppressing photo exhibits;

12.     Ineffective assistance of counsel for failing to impeach the victim;

13.     Ineffective assistance of counsel for failing to impeach or challenge the lead detective;

14.     Prosecutorial misconduct for suppressing a conversation;

15.     Ineffective assistance of counsel for failing to challenge conflicting testimony;

16.     Ineffective assistance of counsel for failing to challenge testimony about when the victim told Atkins his age;

17.     Trial court erred in failing to hold a hearing on his motion regarding ineffective assistance of counsel;

---

[1]      *See Franks v. Delaware*, 438 U.S. 154 (1978) (holding hearing is required when defendant makes a preliminary showing that a warrant relies on false statements made in underlying affidavit).

18.   Ineffective assistance of counsel for failing to introduce evidence about Atkins's successful lawn business;

19.   Prosecutorial misconduct for making misleading statement to the jury;

20.   Ineffective assistance of counsel for failing to call an expert witness and present rebuttal evidence;

21.   Ineffective assistance of counsel for failing to investigate video evidence;

22.   Ineffective assistance of counsel for failing to object, confer with Atkins, or request a hearing on extraneous offense evidence; and

23.   Prosecutorial misconduct for knowingly presenting false testimony at punishment.

ECF 1, at 8-17.

## DENIAL

The Director denies all of Atkins's assertions of fact except those supported by the record or specifically admitted herein. In addition, the Director opposes any future, substantive motions filed by Atkins and will respond to any such motions only upon order of the Court.

## STATEMENT OF THE CASE

### I.   Procedural History

Atkins challenges the Director's custody of him pursuant to the judgment and sentence of Criminal District Court No. 6 of Dallas County, Texas, in cause no. F-06-00566-X. SHCR-01, vol. 2 at 94-96.[2] Atkins was charged with

---

[2]   SHCR-01, refers to the written pleadings contained within *Ex parte Atkins*, No. 74,886-01 (Tex. Crim. App. 2010). It is followed by the applicable volume and page numbers. SHCR-02, refers to the written pleadings contained within *Ex parte*

attempted sexual performance by a child for employment, as a habitual offender. *Id*. at 91. Atkins pled not guilty, was tried by a jury, found guilty, and was sentenced by the jury to life imprisonment. *Id*. at 94.

Atkins appealed and his conviction was affirmed by the Fifth Court of Appeals of Texas, on July 23, 2008. *See Atkins v. State*, No. 05-07-00586-CR, slip op. at 1, 17 (Tex. App.–Dallas 2008, pet. ref'd). Atkins filed a petition for discretionary review (PDR) and it was refused on December 10, 2008. *Atkins v. State*, PDR No. 1163-08.

Atkins filed a first application for state writ of habeas corpus challenging his conviction, at the earliest, on March 1, 2010.[3]  SHCR-01, vol. 2 at 13. The Texas Court of Criminal Appeals denied the application without written order, on the findings of the trial court without a hearing, on November 10, 2010. SHCR-01, vol. 1 at Action Taken. Atkins filed a second application for state writ of habeas corpus challenging his conviction, at the earliest, on December 10, 2015.  SHCR-03, at 18. The Texas Court of Criminal Appeals dismissed the application as subsequent, pursuant to Texas Code of Criminal Procedure, Art. 11.07, § 4(a)-(c), on March 2, 2016. SHCR-03, at Action Taken. This proceeding followed on July 22, 2016. ECF 1, at 20.

---

*Atkins*, No. 74,886-02 (Tex. Crim. App. 2015). SHCR-03, refers to the written pleadings contained within *Ex parte Atkins*, No. 74,886-03 (Tex. Crim. App. 2016).

[3]    The Fifth Circuit has held that the prison mailbox rule applies to state habeas applications. *Richards v. Thaler*, 710 F.3d 573, 578-79 (5th Cir. 2013). The Director reserves the right to argue a later filing date than the date he signed his applications, for both of Atkins's state habeas applications.

## II.    Statement of the Facts

The state appellate court summarized the facts:

In May 2005, T.R. and his friend, R.S., both fifteen, were standing at a bus stop when appellant drove up and asked for directions to a nearby high school. When the boys tried to direct him, appellant acted confused and asked them to get in and show him. The boys agreed. Once inside the car, appellant asked them their ages and where they went to school. The boys told him. Appellant said he had a lawn-mowing business and offered them a job. At the end of the ride, T.R., who had been looking for a job, gave appellant his real name and telephone number; R.S. gave appellant a fake name and number.

A couple of days later, appellant called T.R., asked if he could drive, and asked if he could help him get his car from the shop. The next day, appellant picked up T.R and almost immediately engaged him in a sexually explicit conversation, asking whether T.R. had ever had sex and talking about pornographic movies. Instead of driving to the shop, appellant took T.R. to his apartment, claiming he needed to change his clothes. Once inside, T.R. sat in the living room while appellant went to the back. T.R. said that seconds later, appellant called him to come back to his bedroom.

T.R. said he stepped inside the bedroom and sat down in a chair next to the bed. Appellant, still clad in a dress shirt, slacks, and shoes, was talking about a pornographic movie. Appellant put the movie on and then began undressing until he was wearing only a muscle shirt and gym shorts. T.R. said he was wondering what appellant was doing. Appellant then laid across the bed, with his head about two feet from T.R., put his hand inside his shorts and began fondling himself while making sexually explicit comments. T.R. said he was nervous and sat there for two to three minutes. Appellant then asked T.R. to stand up so he could see how tall he was; T.R. stood up and appellant faced him from less than a foot away. T.R., thinking that appellant was trying to "have sex" with him, made up a story that he lost his keys so that he could flee the apartment. Once outside the gate of the complex, he saw appellant driving around the apartments looking for him. T.R. ran to a nearby gas station and called his stepfather, Bobby Nicholas.

Nicholas testified that when he got the call from T.R., he could tell T.R. was "upset and nervous" and sounded like he was crying. When Nicholas arrived at the gas station, T.R. was "scared" and "real nervous." T.R. told his stepfather that he had "just ran from this guy's house that tried to rape him." Nicholas said T.R. told him that the man got him to his apartment, took off his clothes, put on a pornographic movie, and started playing with himself.

When they arrived home, Nicholas retrieved appellant's telephone number from the Caller ID, called appellant, and identified himself as T.R.'s father. He asked appellant why he picked up his son without his permission and said T.R. had told him that appellant had tried to rape him. Appellant denied the allegations and said he "wouldn't do anything like that." When Nicholas said he was going to call the police, appellant begged him not to. Nicholas hung up and called the police. While Nicholas was on the telephone with the police, appellant called back crying and offered money if he would not call the police.

As part of the investigation, the police took statements from T.R. and his parents. Additionally, the police set up a recorded telephone call from T.R. to appellant. During the conversation, appellant denied any wrongdoing, although T.R. believed appellant knew he was being recorded. Finally, the police executed a search warrant at appellant's apartment and found, among other things, a pinhole camera on a bedroom wall trained on the bed, a commercial pornography videotape, and fifty-eight homemade videotapes. Fifteen of the tapes showed numerous instances in which appellant was seen engaging in the type of conduct he engaged in with T.R. that ultimately resulted in sexual activity between appellant and the other male. A tape containing a representative sample of one encounter was admitted. At the punishment phase, the remaining tapes, totaling more than ninety hours, were admitted.

*Atkins v. State*, slip op. at 1-3.

## RECORDS

Records of Atkins's state court proceedings have been filed with the Court. The Director notes that State's Exhibits 48 and 49 were not submitted to the Court because they are not necessary to the disposition of this case and contain photographs of young, nude, unidentified males. *See* 7 RR SX 48, 49; 5 RR 53, 60.[4] Because their ages are undetermined, it is possible that these young men are minors. *Id.* Therefore, the Director did not submit the exhibits in an abundance of caution. Should the Court wish to view these exhibits, the Director would seek to file them under seal.

## EXHAUSTION/LIMITATIONS/SUCCESSIVE PETITION

Atkins's claims are time-barred. 28 U.S.C. § 2244(d). His petition is not subject to the successive petition bar. 28 U.S.C. § 2244(b). Because of the lengthy and multifarious nature of Atkins's claims, the Director reserves the right to argue exhaustion and procedural default, as well as the merits, should this Court not dismiss Atkins's claims with prejudice as time-barred.

## ANSWER WITH BRIEF IN SUPPORT

The Court must dismiss Atkins's claims with prejudice because Atkins has failed to file his federal writ petition within the statute of limitations provided in § 2244(d) of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which provides:

> (d) (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the

---

[4]    RR refers to the Reporter's Record of Atkins's trial and is preceded by the applicable volume number and followed by the applicable page or exhibit numbers. SX refers to State's Exhibit.

judgment of a State court. The limitation period shall run from the latest of–

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d) (West 2016).

Conviction finality governs the timeliness of Atkins's claims. *See* 28 U.S.C. § 2244(d)(1)(A). Atkins's petition for discretionary review was refused on December 10, 2008. *Atkins v. State*, P.D.R. No. 1163-08. His conviction became final ninety days later on March 10, 2009, when the time for timely filing a petition for writ of certiorari expired. *See Roberts v. Cockrell*, 319 F.3d 690, 693-95 (5th Cir. 2003) (finality determined by when time for filing further appeals expires); Sup. Ct. R. 13.1. Therefore, the one-year limitation period for

filing a federal petition expired one year later on March 10, 2010, absent tolling.

Under AEDPA, "[t]he time during which a properly filed application for State post-conviction or other collateral review . . . is pending shall not count toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (2007). Therefore, Atkins's first state habeas application tolled the limitations from filing on March 1, 2010, until denial on November 10, 2010, for a total of 255 days. SHCR-01, vol. 1 at 13, Action Taken. This extended Atkins's deadline until November 20, 2010. Atkins's second state writ application did not toll the limitations period because by the time Atkins filed it, at the earliest, on December 10, 2015, the limitations period had already expired.[5] SHCR-03, at 18; *see Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000) (stating that a state habeas writ application filed after the expiration of the limitations period has no tolling effect). Thus, the instant petition filed, July 22, 2016, is over five and a half years late.

Atkins argues that difficulty obtaining a copy of the findings of fact and conclusions of law made during his state habeas proceeding created an impediment to filing his federal habeas petition, such that he is entitled to statutory tolling that would save his petition. ECF 2, at 4-24. But to invoke section 2244(d)(1)(B), a petitioner must show that: "(1) he was prevented from filing a petition, (2) by State action (3) in violation of the Constitution or federal

---

[5]     Atkins also filed a state application for writ of mandamus, but it could not have tolled the limitations period because a writ of mandamus is not a motion for post-conviction relief. *See* SHCR-02; *see also Moore v. Cain*, 298 F.3d 361, 366-67 (5th Cir. 2002) (holding that writs of mandamus are not applicable as state collateral review).

law." *Egerton v. Cockrell*, 334 F.3d 433, 436 (5th Cir. 2003). These requirements imply an element of causality and materiality with respect to a prisoner's ability to file his federal petition. *Wood v. Spencer*, 487 F.3d 1, 7 (1st Cir. 2007) ("a state-created impediment must, to animate the limitations-extending exception, 'prevent' a prisoner from filing for federal habeas relief.").

Atkins was not prevented from timely filing a federal habeas petition because of his alleged difficulties in obtaining a copy of the findings of fact and conclusions of law. First, he could have timely filed a federal habeas petition without the findings and conclusions—as they did not implicate his knowledge of his claims or the procedural rules that he needed to follow to prevent summary dismissal. *See Egerton*, 334 F.3d at 438 (finding that an inadequate prison law library could constitute a "state created impediment" if it prevented a petitioner from knowing the basic procedural rules necessary to avoid having his habeas petition summarily thrown out of court). And it does not appear that Atkins ever requested a copy of the findings of fact and conclusions of law from the district court clerk, the party responsible for serving them. *See* Tex. Code Crim. Proc. Code Ann. Art. 11.07 § 7 (West 2010). Atkins references a letter that he sent the clerk requesting copies of various documents he had filed, but that letter is dated August 13, 2010, presumably prior to the trial court's entering of any findings of fact and conclusions of law, and the letter does not ask for filings made by the trial court. ECF 2, at 10; SHCR-02, at APX-31; SHCR-01, vol. 1 at 65-88 (undated findings of fact and conclusions of law), 89-90 (trial counsel's affidavit dated 8/9/2010 and relied on by the trial court in making the findings and conclusions). Finally, if the clerk truly failed to

serve the findings and conclusions on Atkins when they were made, this oversight was not the result of "systemic mishandling," such that statutory tolling might be appropriate. *See Critchley v. Thaler*, 586 F.3d 318, 321 (5th Cir. 2009). Accordingly, Atkins is not entitled to tolling under section 2244(d)(1)(B).

Neither do Atkins's claims concern a constitutional right recognized by the Supreme Court within the last year and made retroactive to cases on collateral review. *See* 28 U.S.C. § 2244(d)(1)(C). And Atkins has not shown that he could not have discovered the factual predicate of his claims until a date subsequent to the date his conviction became final.[6] *See* 28 U.S.C. § 2244(d)(1)(D). Conviction finality governs the timeliness of Atkins's claims and they are made too late. *See* 28 U.S.C. § 2244(d)(1)(A).

Additionally, ignorance of the law and lack of legal assistance, even for an incarcerated prisoner, generally do not excuse prompt filing. *Felder v. Johnson*, 204 F.3d 168, 171 (5th Cir. 2000); *Fisher v. Johnson*, 174 F.3d 710, 714 (5th Cir. 1999); *Davis v. Johnson*, 158 F.3d 806, 808-12 (5th Cir. 1998); *see*

---

[6]    Atkins makes some conclusory allegations about newly discovered evidence. ECF 1, at 19. But, "[m]ere conclusory statements do not raise a constitutional issue in a habeas case." *Schlang v. Heard*, 691 F.2d 796, 799 (5th Cir. 1982) (citations omitted). Further, Atkins was not permitted to delay filing while he searched for additional evidence in support of his claims. *See Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998) ("[Petitioner] is confusing his knowledge of the factual predicate of his claim with the time permitted for gathering evidence in support of that claim . . . Section 2244(d)(1)(D) does not convey a statutory right to an extended delay, in this case more than seven years, while a habeas petitioner gathers every possible scrap of evidence that might, by negative implication, support his claim."); *Owens v. Boyd*, 235 F.3d 356, 359 (7th Cir. 2000) ("[T]he time commences when the factual predicate 'could have been discovered through the exercise of due diligence,' not when it was actually discovered by a given prisoner," or "when the prisoner recognizes [the] legal significance [of important facts].").

*also United States v. Flores*, 981 F.2d 231, 236 (5th Cir. 1993) (neither an inmate's illiteracy, deafness, or lack of legal training amounts to factors external to the inmate to excuse an abuse of the writ); *Moore v. Roberts*, 83 F.3d 699, 704 (5th Cir. 1996) (a petitioner's lack of interest in challenging prior convictions was not cause to excuse a procedural default); *Saahir v. Collins*, 956 F.2d 115, 118-19 (5th Cir. 1992) (holding neither prisoner's *pro se* status nor ignorance of the law constitutes "cause" for failing to include a legal claim in his prior petition); *see also Flanagan v. Johnson*, 154 F.3d 196, 198-99 (5th Cir. 1998) (petitioner's failure to discover the significance of the operative facts does not constitute cause).

Finally, Atkins has not alleged any facts that could support a finding that equitable tolling applies. *See Holland v. Florida*, 130 S. Ct. 2549 (2010) (holding that AEDPA's statute of limitations is subject to equitable tolling). The Fifth Circuit has long held that equitable tolling is available only in "rare and exceptional circumstances." *Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir. 1999); *Flores v. Quarterman*, 467 F.3d 484, 486 (5th Cir. 2006) (citing *Felder v. Johnson*, 204 F.3d 168, 170–71 (5th Cir. 2000) (citation omitted)). It applies principally where the plaintiff is "actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Flores*, 467 F.3d at 487 (quoting *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) (citation omitted)). But, a "garden variety claim of excusable neglect" does not support equitable tolling. *Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002) (citing *Rashidi v. Am. President Lines*, 96 F.3d 124, 128 (5th Cir. 1996)).

"Where [petitioner] could have filed his claim properly with even a modicum of due diligence, we find no compelling equities to justify tolling." *Rashidi*, 96 F.3d at 128; *see Fisher v. Johnson*, 174 F.3d 710, 715 (5th Cir. 1999) ("equity is not intended for those who sleep on their rights" (citation omitted)); *In re Wilson*, 442 F.3d 872, 875 (5th Cir. 2006) (same). To be entitled to equitable tolling, a petitioner must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way" and prevented timely filing. *Lawrence v. Florida*, 127 S. Ct. 1079, 1085 (2007) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). And "[i]n order for equitable tolling to apply, the applicant must diligently pursue his § 2254 relief." *Coleman*, 184 F.3d at 403.

Atkins fails to demonstrate entitlement to equitable tolling. He claims that he was not served the findings of fact and conclusions of law made during his state habeas proceeding. But the record does not reflect that he ever notified the clerk of this error and he was able to obtain the document through the Texas State Law Library. ECF 1, at 19. If Atkins allegations are true, a clerical error by the district clerk would nonetheless not constitute a rare and exceptional circumstance. Moreover, Atkins waited until there were only nine days left on his federal limitations period to file his first state habeas application. SHCR-01, vol. 1 at 13. In doing so, he assumed the risk that such a short timeframe presented. "[E]quity is not intended for those who sleep on their rights." *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999) (citing *Covey v. Ark. River Co.*, 865 F.2d 660, 662 (5th Cir. 1989)); *see also Coleman v. Johnson*, 184 F.3d 398, 403 (5th Cir. 1999) (unexplained six month delay after

the state court denied the state petition rendered the circumstances of that case "not extraordinary enough to qualify for equitable tolling under §2244(d)(1)"); *see also Melancon v. Kaylo*, 259 F.3d 401, 408 (5th Cir. 2001) (holding that petitioner had not shown reasonable diligence because he "waited more than four months to file his federal habeas petition").

Atkins's claims are over five and a half years late and should be dismissed with prejudice as barred by the statute of limitations.

## CONCLUSION

For the above reasons, the Director requests that the petition be denied and dismissed with prejudice and that no certificate of appealability issue.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

JEFFERY C. MATEER
First Assistant Attorney General

ADRIENNE McFARLAND
Deputy Attorney General
for Criminal Justice

EDWARD L. MARSHALL
Chief, Criminal Appeals Division


s/ Jessica Manojlovich
*Lead Counsel          JESSICA MANOJLOVICH*
Assistant Attorney General
State Bar No. 24055632

P.O. Box 12548, Capitol Station
Austin, Texas  78711
(512) 936-1400
(512) 936-1280 (FAX)

ATTORNEYS FOR RESPONDENT


## CERTIFICATE OF SERVICE

I do hereby certify that a true and correct copy of the above and foregoing

pleading is being served by placing the same in the United States Mail, postage

prepaid, on the 26th day of January 2017, addressed to:

Willie James Atkins
TDCJ-CID No. 1441701
Stiles Unit
3060 FM 3514
Beaumont, TX 77705


s/ Jessica Manojlovich
JESSICA MANOJLOVICH
Assistant Attorney General

15